## VANN v. UNITED STATES.
### No. 7545.

Circuit Court of Appeals, Fifth Circuit.
April 10, 1935.

Crampton Harris, of Birmingham, Ala., for appellant.

Jim C. Smith, U. S. Atty., of Birmingham, Ala.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

BRYAN, Circuit Judge.

This is a prosecution under the mail fraud statute, 18 USCA § 338. Of the two defendants, Griffith was acquitted and Vann was convicted. In support of this his appeal, Vann argues that the scheme alleged, assuming that it was fraudulent, had been accomplished and was at an end before the mailing of any of the letters which the indictment charges were mailed in execution of it. But he also fairly, though somewhat inartificially, raises the question whether there was a fatal variance between the allegata and the probata.

The indictment alleges that the defendants devised a "scheme and artifice to defraud Otis Burnett and John Wiggins and for obtaining money and property from them by means of divers false and fraudulent pretenses, representations and promises and to induce them * * * to deliver to the defendants * * * money and property, with the intent on the part of the defendants * * * to convert the same to their own use, gain and benefit." In elaboration of the scheme, it was alleged that Burnett and Wiggins were confined in jail and charged with the robbery of a bank in Tennessee, from which on April 5, 1932, they had stolen $508 in money and $1200 in Liberty bonds; that as a part of their scheme the defendants planned that they would represent to the bank robbers that, if the latter would cause to be delivered to the defendants the custody and possession of the "said bonds and money * * * they, the defendants, would preserve the same and the proceeds thereof and use the same for the use and benefit of" the robbers, "and that whatever amount thereof was not so used would be by the defendants refunded" to the robbers, whereas "it was the intention of the defendants to convert and appropriate to their own use and benefit the said bonds and money and to defraud and deprive the said John Wiggins and Otis Burnett and the rightful owners thereof of the use and benefit of the same." It was also alleged that it was a further part of the scheme that the defendants, "in the event they were successful in obtaining the said bonds and money by means of the aforesaid pretenses, representations and promises, * * * for the purpose of allaying and dispelling any suspicions of said John Wiggins and Otis Burnett and with the intent and purpose on their part of causing the said John Wiggins and Otis Burnett to have confidence in them, should and would pretend and represent to the said Otis Burnett and John Wiggins that they, the defendants, were looking after the affairs of the said Otis Burnett and John Wiggins and using the aforesaid bonds and money for their use and benefit"; whereas in truth and in fact it was the intention of the defendants to use the money and bonds for their own benefit. The evidence disclosed without dispute that Burnett and Wiggins of their own volition, and without being requested by either of the defendants to do so, sent the money and bonds by Griffith to Vann, and that Vann had acknowledged receiving them before he ever wrote any of the indictment letters.

It did not, as Vann contends, appear from the face of the indictment that the scheme was at an end before any of the letters therein set out were mailed; but we think the case alleged was essentially different from that disclosed by the evidence. The indictment charges that the defendants devised a scheme to defraud and to obtain money and bonds from the robbers by false representations and promises, and thereby to induce the robbers to deliver the money and bonds to them, whereas the evidence disclosed at most that the defendants entered into a scheme to convert property to their own use only after they had received it and without making any promise or offering any inducement whatever to secure possession of it. The representations and promises set forth in the indictment, assuming them to be false and to have been proven, were only the means whereby the fraudulent scheme was to be perpetrated. The evidence leaves no room for doubt that Vann was guilty of receiving stolen goods with knowledge that they had been stolen; and it may be that he was also guilty of violating the mail fraud statute. But we are convinced that there was no evidence which tended to prove that he was guilty of the offense with which he is charged. Therefore the judgment appealed from will, as it appears to us, have to be set aside.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.